1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   LLEWELYN L. GABALIS,                    No. CIV S-09-0253-CMK-P

12              Plaintiff,

13       vs.                              <u>MEMORANDUM OPINION AND ORDER</u>

14   R. PLAINER, et al.,

15              Defendants.

16   _____/

17              Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pursuant to the written consent of all parties, this case is before the

19   undersigned as the presiding judge for all purposes, including entry of final judgment.  <u>See</u> 28

20   U.S.C. § 636(c).  Pending before the court is defendants' motion to dismiss for failure to exhaust

21   administrative remedies or, in the alternative, for summary judgment (Doc. 30).

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

# I. BACKGROUND

### A.     <u>Plaintiff's Allegations</u>

Plaintiff names the following as defendants:  Plainer, Amero, and Harrison.  He states that his cell was searched on January 10, 2007, incident to a lock-down.  According to plaintiff, "[a]n issue arose over an item of my property and I felt that staff were violating my rights and specific Title 15 rules regarding that property."  He states that the searching officers had questioned his right to possess a book entitled <u>The Art of Seduction</u>.  Plaintiff alleges that defendant Plainer instructed the officer to send the book to the institutional investigations and security unit while plaintiff filed an inmate appeal.  However, plaintiff states that the officer ignored defendant Plainer's instructions and instead gave plaintiff the choice of either donating the book or sending it home.

Plaintiff felt the officer was acting contrary to the rules and defendant Plainer's instructions because there had been an earlier incident of staff being met with physical force by prisoners.  For this reason, plaintiff then stated:  "And you wonder why some prisoner's respond to your illegal behavior with violence."  According to plaintiff, this caused the officer to become very agitated.  Plaintiff states that the officer took him to see defendant Plainer at which time "an exaggerated summary of what I had said was conveyed to [Plainer] by the officer."  Plaintiff claims that defendant Plainer then turned to him and said:  "Okay, you want to make this personal."  Following this statement, plaintiff was taken to the program office and surrounded by "approximately fourteen officers in an attempt to intimidate me and/or provoke me to violence by making derogatory statements to me."  Specifically, plaintiff alleges that various officers said words to the effect that "you islanders are nothing but 'niggers.'"  Plaintiff refused to respond and states that he was then escorted back to his housing unit by defendants Amero and Harrison.

/ / /

/ / /

/ / /

1    According to plaintiff, as he was being escorted, defendant Harrison said

2 something to him which he did not hear due to a hearing disability.  Plaintiff states that he turned

3 his head to better understand defendant Harrison and that "at that very moment both sergeants

4 immediately picked me up and threw me to the ground face first with substantial force."  Plaintiff

5 alleges that, while on the ground, defendant Amero "began smashing the left side of my face

6 against the concrete" while defendant Harrison "places his left knee into my back using his body

7 weight to smash me into the ground, while simultaneously striking me with his baton to my

8 knees, thighs, back, and elbow. . . ."  At that point, defendant Amero said:  "That should teach

9 you fucking Islanders to fuck with us."  Plaintiff states that his injuries were so severe that he

10 could not stand or walk and had to be carried to the medical facility.

11    Plaintiff claims he was subjected to excessive force and that such force was

12 applied " in retaliation" because he is of the same racial/ethnic group as a group of inmates

13 involved in a prior incident.[1]

14    **B.    Defendants' Evidence**

15    Defendants have submitted a separate statement of undisputed facts, with

16 supporting exhibits, which establish the following:

17    1.    Plaintiff's cell block was on lock-down on January 10, 2007, while guards
           conducted cell searches;
18
19    2.    Officers found contraband, a book entitled The Art of Seduction in
           plaintiff's cell;

20    3.    Plaintiff demanded to know why the book was being confiscated and he
           was escorted to see defendant Plainer who explained why the book was
21         considered contraband;

22    4.    Plaintiff became agitated and highly argumentative and so Plainer ordered
           plaintiff removed from the housing unit because he was disrupting the
23         ongoing cell searches;

24 ///

25 _____

26    [1]    Plaintiff does not clarify whether he intends to pursue a claim based on retaliation
   or denial of equal protection.

5.  Plainer ordered defendant Harrison to escort plaintiff to the program office to discuss the book further with another officer;

6.  Plainer had no further interaction with plaintiff that day;

7.  In the program office, plaintiff remained upset and angry about the confiscated book;

8.  Shortly later, plaintiff was handcuffed with his hands behind his back and escorted by defendants Amero and Harrison back to his cell;

9.  During the escort back, plaintiff continued to argue about the book;

10. About ten feet away from the entrance to plaintiff's cell block, plaintiff turned his head towards Harrison and stated: "I ain't no bitch";

11. Plaintiff then attempted to break free from Harrison by twisting his body;

12. Amero immediately yelled an order for plaintiff to get down on the ground;

13. Harrison used his left hand to pull plaintiff back towards him while at the same time using his left foot to sweep plaintiff's legs out from under him;

14. Plaintiff fell to the ground, landing on his left side and face;

15. While on the ground, plaintiff continued to attempt to break free and he started kicking his legs;

16. Amero and Harrison both repeatedly ordered plaintiff to stop resisting while Amero attempted to restrain plaintiff by grabbing his ankles;

17. Plaintiff then pulled his left knee to his chest;

18. Fearing that plaintiff was about to kick Amero, Harrison struck the inside of plaintiff's raised left knee once with his baton;

19. Plaintiff stopped kicking and was subdued in leg irons;

20. Additional officers arrived and plaintiff was placed on a gurney to be taken to the medical clinic;

21. Plaintiff sustained injuries to his left knee and shoulder, both elbows, left mid-back area, and left cheek;

22. Based on plaintiff's attempts to kick Amero, Harrison cited plaintiff with a rules violation for attempted battery on a correctional officer; and

23. Plaintiff was found guilty of the rules violation and assessed a loss of 150 days good-time credits, and the guilty finding has not been reversed.

1
## II.  APPLICABLE LEGAL STANDARDS

2
### A.  **Motion to Dismiss**

3
A motion to dismiss based on a prisoner's failure to exhaust administrative

4
remedies is properly the subject of an unenumerated motion under Federal Rule of Civil

5
Procedure 12(b).  See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding a

6
motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the

7
pleadings and decide disputed issues of fact."  Id. at 1119-20.  Where the court looks beyond the

8
pleadings to a factual record in deciding the motion to dismiss, which is ". . . a procedure closely

9
analogous to summary judgment," the court must assure that the plaintiff has faire notice of his

10
opportunity to develop a record.  Id. at 1120 n.14 (referencing the notice requirements outlined in

11
Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d

12
409 (9th Cir. 1988).  Defendants bear the burden of establishing that the plaintiff failed to

13
exhaust administrative remedies prior to filing suit.  See Wyatt, 315 F.3d at 1120.  If the court

14
concludes that administrative remedies have not been exhausted, the unexhausted claim should

15
be dismissed without prejudice.  See id. at 1120; see also Jones v. Bock, 127 S.Ct. 910 (2007).

16
### B.  **Summary Judgment**

17
Summary judgment is appropriate when it is demonstrated that there exists "no

18
genuine issue as to any material fact and that the moving party is entitled to a judgment as a

19
matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

20
21
22
> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

23
24
> Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

25
"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

26
summary judgment motion may properly be made in reliance solely on the 'pleadings,

1   depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u>  Indeed, summary judgment

2   should be entered, after adequate time for discovery and upon motion, against a party who fails to

3   make a showing sufficient to establish the existence of an element essential to that party's case,

4   and on which that party will bear the burden of proof at trial. <u>Id.</u> at 322.  "[A] complete failure of

5   proof concerning an essential element of the nonmoving party's case necessarily renders all other

6   facts immaterial." <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as

7   whatever is before the district court demonstrates that the standard for entry of summary

8   judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

9          If the moving party meets its initial responsibility, the burden then shifts to the

10  opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See</u>

11  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

12  establish the existence of this factual dispute, the opposing party may not rely upon the

13  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

14  form of affidavits, and/or admissible discovery material, in support of its contention that the

15  dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

16  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

17  of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986);

18  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and

19  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

20  for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

21         In the endeavor to establish the existence of a factual dispute, the opposing party

22  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

23  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

24  versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary

25  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

26  genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

1   committee's note on 1963 amendments).

2          In resolving the summary judgment motion, the court examines the pleadings,

3   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

4   any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See

5   Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

6   before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

7   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

8   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

9   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

10  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

11  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

12  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

13  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

14

15                              **III.  DISCUSSION**

16          Defendants argue the action must be dismissed because plaintiff failed to exhaust

17  administrative remedies prior to filing suit.  On the merits, defendants seek summary judgment

18  based on the following arguments: (1) plaintiff's claims are barred because success on the merits

19  necessarily implies the invalidity of a prison disciplinary ruling assessing a loss of good-time

20  credits; (2) defendant Plainer did not use any force on plaintiff and the force used by the other

21  defendants was reasonable under the circumstances; and (3) plaintiff cannot establish retaliation

22  because defendants' actions were not motivated by plaintiff's participation in a protected activity

23  and served a legitimate penological purpose.[2]  On the merits, defendants do not address any

24  possible equal protection claim suggested by plaintiff's allegations.

25  _____

26      [2]      Defendants also argue that they are entitled to qualified immunity.

7

A.    **Exhaustion**

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court recently addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.

The Supreme Court also held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits.  548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.  Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id. at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

/ / /

/ / /

1    A prison inmate in California satisfies the administrative exhaustion requirement

2  by following the procedures set forth in §§ 3084.1-3084.7 of Title 15 of the California Code of

3  Regulations.  In California, inmates "may appeal any departmental decision, action, condition, or

4  policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code

5  Regs. tit. 15, § 3084.1(a).  These regulations require the prisoner to proceed through several

6  levels of appeal:  (1) informal resolution; (2) formal appeal; (3) second level appeal to institution

7  head; (4) third level appeal to the director of the California Department of Corrections and

8  Rehabilitation.  A decision at the third formal level, which is also referred to as the director's

9  level, is not appealable and concludes a prisoner's departmental administrative remedy.  See Cal.

10  Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2).  Departmental appeals coordinators may

11  summarily reject a prisoner's untimely administrative appeal.  See Cal. Code Regs. tit. 15, §§

12  3084.3(c)(6) and 3084.6(c).  Currently, California regulations do not contain any provision

13  specifying who must be named in the grievance.

14    Defendants argue:

15    Here, Gabalis did not file any grievance concerning Defendants'
    alleged use of excessive force or their alleged retaliatory conduct.
16    Between January 10, 2007 and January 28, 2009, Gabalis filed two
    grievances at HDSP that were accepted for review. (Robertson Decl. ¶ 4).
17    In the first grievance, Log No. 07-1261, Plaintiff sought to have the
    finding of guilty for attempted battery on an officer reversed. (Id. Ex. B).
18    The second grievance, Log No. 07-2259, he complained of a broken
    television. (Id. Ex. C).  During this period, Gabalis's appeal of Log No.
19    07-1261 to the third level was the only appeal accepted for Director's level
    review. (Foston Decl. ¶¶ 3-4).
20    Because Gabalis did not file any grievance concerning the events
    of, or Defendants' conduct on, January 10, 2007, he did not exhaust his
21    administrative remedies.  Accordingly, the Court should grant this motion
    and dismiss this case without prejudice.
22

23  In the attached declaration of D. Foston, who is the Chief of the Inmate Appeals Branch, Foston

24  states that between January 10, 2007 – the date of the incident alleged in this case – and January

25  28, 2009 – the date this action was filed – one appeal (log no. 07-1261) was accepted for

26  Director's Level review.  This grievance is attached as Exhibit A to the declaration of T.

1   Robertson, who is an appeals coordinator.  The evidence establishes that the grievance was

2   submitted by plaintiff on March 25, 2007.  Plaintiff complained that a disciplinary guilty finding

3   was not based on a preponderance of the evidence.  As to remedy, plaintiff sought to have a

4   finding of guilt for attempted battery on a peace officer reversed.

5           Defendants conclude that, because the only grievance which was reviewed

6   through the Director's Level relates to reversal of the guilty finding and not directly to the

7   underlying events of January 10, 2007, plaintiff has failed to exhaust his administrative remedies.

8   In his opposition, plaintiff asserts that he did in fact submit a grievance concerning the January

9   10, 2007 events and that this grievance was submitted on January 25, 2007, but was never

10  processed by prison officials.  In support, plaintiff provides the declaration of another inmate

11  who states he saw plaintiff place an inmate grievance in the institutional mail on or about January

12  25, 2007.  Plaintiff contends that his grievance was ignored "in an attempt to circumvent

13  accountability. . . ."

14          The court finds that defendants have met their initial burden of demonstrating the

15  lack of exhaustion.  Specifically, the evidence indicates that the only grievance received for

16  review at the Director's Level was the March 25, 2007, grievance complaining of lack of

17  evidence supporting a prison disciplinary finding.  The court finds that plaintiff has not met his

18  burden of establishing as a defense to defendants' exhaustion argument that he submitted a

19  grievance concerning the January 10, 2007, events on January 25, 2007, and that such grievance

20  was intentionally ignored by prison officials.  While he submits the declaration of another inmate

21  who allegedly saw plaintiff submit a grievance on January 25, 2007, there is no evidence as to the

22  content of this grievance.  Plaintiff could have attached a copy of the purported January 25, 2007,

23  grievance with his opposition but did not.  Thus, there is no credible evidence to support

24  plaintiff's contention that his January 25, 2007, grievance related to the events of January 10,

25  2007.

26  ///

**B.**   **Merits**

As an alternative to dismissal for failure to exhaust administrative remedies, defendants seek summary judgment on the merits of plaintiff's claims.  Specifically, they argue that all claims are barred under the doctrine of Heck v. Humphrey because plaintiff's claims necessarily sound in habeas corpus.  They also argue that plaintiff cannot establish that excessive force was used or that force was used in retaliation and not for a legitimate penological purpose.

1.   Relationship to Habeas

When a state prisoner challenges the legality of his custody and the relief he seeks is a determination that he is entitled to an earlier or immediate release, such a challenge is not cognizable under 42 U.S.C. § 1983 and the prisoner's sole federal remedy is a petition for a writ of habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (per curiam).  Thus, where a § 1983 action seeking monetary damages or declaratory relief alleges constitutional violations which would necessarily imply the invalidity of the prisoner's underlying conviction or sentence, or the result of a prison disciplinary hearing, such a claim is not cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding.  See Edwards v. Balisok, 520 U.S. 641, 646 (1987) (holding that § 1983 claim not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction); Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 not cognizable because allegations were akin to malicious prosecution action which includes as an element a finding that the criminal proceeding was concluded in plaintiff's favor); Butterfield v. Bail, 120 F.3d 1023, 1024-25 (9th Cir. 1997) (concluding that § 1983 claim not cognizable because allegations of procedural defects were an attempt to challenge substantive result in parole hearing); cf. Neal, 131 F.3d at 824 (concluding that § 1983 claim was cognizable because challenge was to conditions for parole eligibility and not to any particular parole determination).

1  In particular, where the claim involves loss of good-time credits as a result of an adverse prison

2  disciplinary finding, the claim is not cognizable.  See Blueford v. Prunty, 108 F.3d 251, 255 (9th

3  Cir. 1997).  If a § 1983 complaint states claims which sound in habeas, the court should not

4  convert the complaint into a habeas petition.  See id.; Trimble, 49 F.3d at 586.  Rather, such

5  claims must be dismissed without prejudice and the complaint should proceed on any remaining

6  cognizable § 1983 claims.  See Balisok, 520 U.S. at 649; Heck, 512 U.S. at 487; Trimble, 49

7  F.3d at 585.

8            Defendants argue: "Gabalis's claims for excessive force and retaliation fail

9  because success of his § 1983 action will necessarily invalidate the finding of guilt in the

10  disciplinary proceedings and will affect his time to be served in accordance with the underlying

11  sentence."  The court does not agree.  The rules violation was based on plaintiff's conduct,

12  specifically his attempting to kick Amero.  Success on plaintiff's claims, which arise from

13  defendants' alleged conduct, would not necessarily imply that the factual bases for the rules

14  violation (i.e., plaintiff's conduct) no longer exist such that the guilty finding would be

15  invalidated.  In other words, it is possible for defendants to have used excessive and for plaintiff

16  to have attempted to assault a correctional officer.  Thus, success on plaintiff's civil rights claims

17  would not necessarily imply that the guilty finding and resulting loss of good-time credits is

18  invalid.

19            2.    Excessive Force

20            The treatment a prisoner receives in prison and the conditions under which the

21  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

22  and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

23  511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

24  of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

25  (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

26  Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

"food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

/ / /

/ / /

1          As to Plainer, the court agrees with defendants that the undisputed facts foreclose

2   any claim of excessive force.  Specifically, defendants' evidence establishes that Plainer never

3   used any force on plaintiff, let alone excessive force.  As to Amero and Harrison, the court finds

4   that the evidence establishes that the amount of force used was reasonable under the

5   circumstances.  Specifically, the facts show that plaintiff was attempting to break free, was

6   agitated, and was not complying with instructions.  In the face of this behavior, defendants used

7   only that force which was necessary to subdue and restrain plaintiff.  Further, the evidence does

8   not reflect injuries serious enough to indicate that an excessive amount of force was used.

9   Finally, defendants rightly perceived a significant threat from plaintiff who, at the time, was

10  agitated and non-compliant.

11                 3.      Retaliation

12         In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must

13  establish that he was retaliated against for exercising a constitutional right, and that the

14  retaliatory action was not related to a legitimate penological purpose, such as preserving

15  institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).

16  In meeting this standard, the prisoner must demonstrate a specific link between the alleged

17  retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th

18  Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner

19  must also show that the exercise of First Amendment rights was chilled, though not necessarily

20  silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.

21  2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner

22  plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials

23  took adverse action against the inmate; (2) the adverse action was taken because the inmate

24  engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment

25  rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes,

26  408 F.3d at 568.

1    The court agrees with defendants that, on the undisputed facts, plaintiff cannot

2 show that defendants' conduct did not serve a legitimate penological interest.  As to Plainer, the

3 evidence shows that he only ordered plaintiff to be escorted away from the cell block after

4 plaintiff became argumentative over confiscation of his book.  Thus, Plainer's conduct served the

5 legitimate penological interest of maintaining order, particularly during ongoing cell searches.

6 Similarly, defendants Amero and Harrison acted in the face of continued resistence from plaintiff

7 while being escorted.  Again, institutional safety justified defendants' conduct in securing and

8 restraining plaintiff, particularly after plaintiff attempted to break free and appeared as if he were

9 about to kick a prison guard.  Defendants' conduct was clearly motivated by legitimate interests

10 in security and safety.

11    The court also agrees with defendants that plaintiff was not engaged in a protected

12 activity.  Plaintiff claims that defendants acted against him because he belongs to the same

13 racial/ethnic group as inmates who had been involved in a prior incident with correctional

14 officers.  Plaintiff does not contend that defendants' conduct was motivated by some action he

15 personally took.  Rather, according to plaintiff, defendants' conduct was motivated by the actions

16 of others.[3]

17 / / /

18 / / /

19

20    [3]    To the extent plaintiff's complaint asserts an equal protection claim, plaintiff
cannot prevail on such a claim.  In order to state a § 1983 claim based on a violation of the Equal
21 Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted
with intentional discrimination against plaintiff, or against a class of inmates which included
22 plaintiff, and that such conduct did not relate to a legitimate penological purpose.  See Village of
Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be
23 brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir.
2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v.
24 Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010
(9th Cir. 1985).
25    As discussed above in this section, the undisputed evidence shows that
defendants' conduct served legitimate penological interests.  Thus, plaintiff cannot establish a
26 necessary element of any equal protection claim.

**IV.  CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Defendants' motion to dismiss or, in the alternative, for summary judgment (Doc. 30) is granted in part and denied in part as outlined herein; and

2.      The Clerk of the Court is directed to enter summary judgment in favor of defendants and against plaintiff and to close this file.


 DATED:  November 22, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE